722 A.2d 136 (1997)
317 N.J. Super. 367
D.O., Plaintiff,
v.
R.B., T.B., and B.B., Defendants.
Superior Court of New Jersey, Chancery Division, Family Part, Sussex County.
Decided November 7, 1997.
*137 David J. Weaver, Newton, appearing for the Plaintiff (Trapasso, Dolan & Hollander, attorneys, John D. Williams, Esq., on the briefs).
S.M. Chris Franzblau, Livingston, appearing and on the briefs for the Defendants (Franzblau, Dratch, P.C. attorneys).
CONFORTI, J.S.C.
Plaintiff, D.O., a New Jersey resident, by verified complaint seeks to establish the paternity of defendant, B.B. All defendants move for dismissal. The relevant material facts are not in dispute, and the court makes the following factual findings. Defendant, B.B., was born on December 7, 1977 to defendant, T.B. Defendant, R.B., was married to defendant, T.B., on June 29, 1974 and is the presumed natural father of defendant, B.B., pursuant t o N.J.S.A. 9:17-43. All defendants now reside in Texas.
Plaintiff, D.O., alleges that he and defendant, T.B., had an affair in New Jersey over twenty years ago in which they had sexual relations when defendant, T.B., became pregnant. Plaintiff further alleges that defendant, T.B., told plaintiff during this same period of time that she had sexual relations with her husband, R.B., and that she wanted plaintiff to stay out of her life. Defendant, T.B., never mentioned to plaintiff that he was the child's natural father.
Seventeen years later, defendant, T.B., contacted plaintiff through a friend who asked plaintiff to call defendant, T.B. During this contact, defendant, T.B., told plaintiff for the first time that he was the father of defendant, B.B. Defendant, T.B., asked plaintiff to give her son, defendant, B.B., advice about choosing a college and dissuade defendant, B.B., from a military career, since plaintiff had served in the military. Defendant, T.B., invited plaintiff to her home and introduced plaintiff as a former business associate to defendant, B.B. The meeting occurred on defendant, B.B.'s birthday when defendant, R.B., was not home. During this visit, defendant, T.B., also requested that plaintiff give her pictures of himself when he, plaintiff, was seventeen years old.
*138 After this meeting, plaintiff alleges that defendant, T.B., desired to resume their prior relationship. Defendant, T.B., left messages and phone numbers for plaintiff to call her when her husband was away. Plaintiff relates that he took defendant, T.B., to a Catholic priest/psychologist for confession. After confession defendant, T.B., stated to plaintiff that she told the priest that plaintiff was the father of defendant, B.B., and that she needed help in dealing with this situation.
Plaintiff has produced a letter dated January 17, 1995 from defendant, T.B., which reveals defendant, T.B.'s strong feelings for plaintiff and their loving relationship. The letter warmly describes defendant, T.B., hugging defendant, B.B., "for both of us" and, in its postscript, refers to plaintiff giving defendant, T.B., "the greatest gift of all."
Shortly thereafter, defendant, T.B., ended contact with plaintiff telling plaintiff that she would do anything for him but there were things that she and defendant, R.B., would have to do to protect defendant, B.B. Ever since, defendants have rejected any further contact with the plaintiff.
Subsequently, plaintiff alleges experiencing emotional turmoil and friction in his personal and family life and needing psychological counseling to cope with this issue of paternity. In support of his claim for declaratory relief, plaintiff acknowledges potential financial responsibilities concerning defendant, B.B., which he is willing to accept. However, plaintiff does not seek to alter defendant, B.B.'s relationship with defendant, R.B., and will respect any decision by defendant, B.B., to deny plaintiff any relationship with him. Plaintiff also refers to his own daughter whom defendant, B.B., may wish to know some day, as well as any relevant medical and psychiatric family history to which defendant, B.B., is entitled.
In his certification seeking to dismiss plaintiff's complaint, defendant, R.B., has described his "very close, personal relationship" with defendant, BB, and with defendant, T.B. Defendant, R.B., expresses his concerns for the welfare of his family if plaintiff is permitted to proceed with his paternity action. Defendant, R.B., also questions plaintiff's selfish motivations in filing this action and refers to plaintiff never offering any support for defendant, B.B.
Defendant, B.B., emphatically asserts that he has no interest in determining who may be his father or examining any past indiscretions of his mother. Defendant, B.B., considers himself the son of defendant, R.B., with whom he enjoys a close personal relationship "for as long as I can remember." Defendant, B.B., asserts that he has no desire to see or meet plaintiff and does not want him to interfere in his life. Defendant, B.B., waives any claim to plaintiff's future estate and seeks no support from plaintiff. Defendant, B.B., states in his certification "I am almost 20 years of age, an adult. I am no longer a child subject to the Uniform Parenting Act." Finally, defendant, T.B., has filed a certification stating "I verily believe that defendant, B.B., is my son and the son of my husband, defendant, R.B."
The law presumes that defendant, R.B., is the natural father of defendant, B.B., since defendant's T.B. and R.B. are married to each other and defendant, B.B., was born during their marriage. N.J.S.A. 9:17-43a(1). This presumption may be rebutted only by clear and convincing evidence. N.J.S.A. 9:17-43b. Blood test results excluding as a biological father a mother's husband at the time of a child's birth have been held to overcome such a presumption. See M .A. v. Estate of A.C., 274 N.J.Super. 245, 643 A.2d 1047 (Ch.1993). New Jersey has a strong public policy favoring the preservation of the family unit when neither the mother nor her husband have in any way disavowed the husband's paternity of the child. M.F. v. N.H. 252 N.J.Super. 420, 425, 599 A.2d 1297 (App. Div.1991). While plaintiff has standing to commence this suit pursuant to N.J.S.A. 9:17-45a, the Appellate Division decision in M.F., supra, 252 N.J.Super. at 429, 599 A.2d 1297 clearly states: "We hold that the court may not order blood tests or permit the action to continue where the plaintiff's claim of paternity conflicts with the presumption established in N.J.S.A. 9:17-43a(1), unless the court determines by clear and convincing evidence that it is in the best interest of the *139 child."[1] The reference to blood tests is the statutory language of N.J.S.A. 9:17-48d: If the court determines that there is an articulable reason for suspecting that the alleged father is the natural father, the court shall require the parties to submit to blood tests or genetic tests. (Emphasis added)
N.J.S.A. 9:17-38 et seq. is cited as the "New Jersey Parentage Act". The State Assembly Judiciary Committee statement accompanying this statute states in relevant part. "The New Jersey Parentage Act is intended to establish the principle that regardless of the marital status of the parents, all children and parents have equal rights with respect to each other and to provide a procedure to establish parentage in disputed cases." N.J.S.A. 9:17-38, Assembly Judiciary, Law, Public Safety and Defense Committee Statement, Senate, No. 888-L.1983, c.17.
Against this background of the law, the novel issue for this court is whether to apply the best interest analysis, set forth in M.F., supra, before any blood test for paternity of an adult child may be considered.
At the outset, the court acknowledges that plaintiff has offered persuasive facts to suspect that plaintiff is the natural father of defendant, B.B. See S.S. v. E.S. 124 N.J. 391, 590 A.2d 1188 (1991). Plaintiff alleges his sexual relationship with defendant, T.B., at the time that she became pregnant with defendant, B.B. Seventeen years later plaintiff describes defendant, T.B., advising him that he was defendant, B.B.'s father, introducing him to defendant, B.B., and seeking to renew their romantic involvement. In compelling support of plaintiff's allegations, plaintiff has produced the letter of January 17, 1995 by defendant, T.B. The tone and content of this document establishes the prior amorous relationship between plaintiff and defendant, T.B. The references to hugging defendant, B.B., for "both of us" and to plaintiff providing defendant, T.B., with "the greatest gift of all" can be reasonably construed to mean that defendant, T.B., perceives plaintiff as the natural father of her son, defendant, B.B. Indeed, the opposing certifications by defendants do not deny the past history between plaintiff and defendant, T.B.
Plaintiff argues that the best interest analysis in M.F., supra, either was incorrectly decided, is distinguishable because defendant, B.B., is an adult, or predates the statutory amendment to N.J.S.A. 9:17-48d mandating blood tests where articulable reason to suspect paternity is established. The Court rejects plaintiff's arguments. "Best interest of the child" always remains the fundamental guiding principle of any decision affecting children in the family court. This is especially true in cases involving critical determinations about the effect of biological relationships between fellow human beings. Thus, the court must always be sensitive to and protect what is in the best interests of the child respecting custody, visitation, support, and abuse and neglect from the very birth of the child. Perhaps, most important is the need to provide for the child's best interests when seeking to decide the conflicting parental rights of the parties. The best interest standard is for the benefit of the child and cannot be invoked by other parties. M.F., supra, 252 N.J.Super. at 427, 599 A.2d 1297 citing McDaniels v. Carlson, 108 Wash.2d 299, 310, 738 P.2d 254, 261 (1987).
This best interest analysis does not end when a child becomes emancipated. Even the statute governing adoptions of adults N.J.S.A. 22-1 et seq. asks the court to examine the good moral character and reputation of the adoptor and "that the adoption *140 will be to the advantage and benefit of the person to be adopted." Similarly, examining a claim for paternity of an adult child requires the court to scrutinize the best interests of the adult child. Assertions of paternity, even in this context, can occur for ill conceived or wrongful motives or purposes. The court's vigilance should not cease merely because the child at issue is no longer a minor.
Plaintiff argues that the amended Parentage Act of December 20, 1994 commands ordering blood tests by use of the word "shall" in N.J.S.A. 9:17-48d. Plaintiff argues that requiring a best interest analysis before a finding of "articulable reason" renders the statutory amendment "futile and abortive" citing City of Newark v. Township of Hardyston, 285 N.J.Super. 385, 395, 667 A.2d 193 (App.Div.1995), cert. den. 143 N.J. 518, 673 A.2d 277 (1996).
The court rejects this argument as well. Despite the above-cited statutory amendment to N.J.S.A. 9:17-48d, the underlying basis to compel a best interest analysis did not change with the amended statute. As stated in M.F., supra, 252 N.J.Super. at 426-427, 599 A.2d 1297:
We have considered the constitutionally permissible limitations on the rights of unwed natural fathers in light of the presumption of the paternity of the mother's husband, the strength of that presumption, the fact that the mother's husband here has acknowledged the child, and the fact that there is no statutory presumption of paternity in favor of this plaintiff.
These considerations, outlined in M.F., supra, apply equally as well in the instant case and justify employing a best interest analysis for defendant, B.B.
Defendants also point out that the basis for the statutory amendments to the New Jersey Parentage Act was to conform the law to the "Omnibus Budget Reconciliation Act of 1993", Pub.L. 103-66 (1993) to enable New Jersey to receive federal welfare funding and aid to dependent children by establishing a State plan to impose and enforce child support obligations including genetic testing. Nothing in the amendment to N.J.S.A. 9:17-48d compels this court to conclude that the rationale for employing a best interest of the child standard has been eliminated.
With defendant, B.B. now an adult, should the best interest factors cited in M.F., supra, 252 N.J.Super. at 429-430, 599 A.2d 1297 be proven by clear and convincing evidence? A persuasive argument can be made that concerns relating to the psychological harm to and protection of the child's general welfare are not as acute when the child is an adult. Issues of family stability and out of wedlock births, while certainly relevant, do not have the equivalent magnitude affecting adults as they do with children. Yet, the strong statutory presumption and public policy favoring preservation of the family unit, when supported and affirmed by the mother, her husband, and the adult child compel a trial court to defer to an appellate court or a legislative determination to reduce the burden of proof.
Scrutinizing the evidence presented in the certifications filed by the parties, the court finds that plaintiff has failed to prove by clear and convincing evidence that establishment of plaintiff's paternity and rebuttal of defendant, R.B.'s paternity will serve the best interests of defendant, B.B. M.F., supra, 252 N.J.Super. at 427, 599 A.2d 1297. Essentially, plaintiff argues that some day defendant, B.B., may wish to know plaintiff's daughter by his marriage and relevant family medical and psychiatric history. Thus, plaintiff asserts that a paternity determination would allow defendant, B.B., to know his background and establish his identity and would put to rest this question which has been gnawing at plaintiff ever since defendant, T.B., told him that he was the father of defendant, B.B. See Paternity of C.A.S., 161 Wis.2d 1015,1038, 468 N.W.2d 719, 728 (1991). Plaintiff argues the Assembly Judiciary Committee statement accompanying the Parentage Act, acknowledges plaintiff's rights being equal to that of defendants to compel ordering blood tests to establish paternity. Specifically, with respect to the best interests factors enumerated in M.F., supra, plaintiff analyzes each factor as justifying permitting this case to proceed and blood tests to be administered. No harm will occur to the existing close relationship between *141 defendant, B.B., and defendants, R.B. and T.B. Defendant, B.B., is an adult, not a child and, therefore, better equipped to manage his physical, mental, and emotional needs. Plaintiff seeks no visitation and will not intrude into the life of defendant, B.B., leaving any contact up to defendant, B.B. Society's opprobrium will not exist since only initials are utilized in the caption of this lawsuit. Uncertainty of parentage has been demonstrated by the evidence which defendant, B.B., inferentially at least, acknowledges by stating that he has no interest in determining who may be his father through genetic testing.
Plaintiff's reliance upon the Assembly Judiciary Committee statement to the Parentage Act as controlling is misplaced. The Committee's statement accompanied the statute's original enactment. The statute give plaintiff standing to file suit; beyond that, however, the Appellate Division decision in M.F., supra, is dispositive to require a best interests review.
Plaintiff's contentions do not clearly convince or substantially establish that plaintiff has met his burden. The court considers as paramount the twenty year history of the family unit of these defendants. As defendant, B.B., himself, states in his opposing certification in paragraphs five and six, ".....we three in my family have developed a close bond and sense of interpersonal responsibility and feeling which need not be torn asunder. I truly believe that the continuance of the matter in an attempt to fracture our close family relationship will cause a serious impact on the inter-personal relationship which my father, mother and I have with each other." (Emphasis added). Plaintiff's arguments pale when weighed against this strong statement of family unity and bonding that defendant, B.B., wishes to maintain. Defendant, B.B., seeks no association with plaintiff, he desires no support, waives any claim of inheritance, and wishes to live his life free of contact from plaintiff. Unless clear and convincing evidence is present to suggest otherwise, the statutory presumption supports defendant, B.B.'s desire to continue his relationship with defendant, R.B. as his father. In effect, plaintiff has presented reasons to rebut negative concerns about the merits of his complaint seeking a paternity determination. What plaintiff has failed to provide is evidence to demonstrate how the best interests of defendant, B.B., would be served by establishing plaintiff's paternity and rebutting defendant, R.B.'s twenty year relationship as defendant, B.B.'s "father". Plaintiff is advancing reasons that he perceives to be in his best interest and arguing that these reasons shall not cause any detriment to defendants. Thus, plaintiff submits that he seeks no visitation with defendant, B.B., or intrusion into the lives of the defendants, and plaintiff contends defendants shall not suffer from any societal disapproval. Such arguments fail to overcome the strength of the statutory presumption in favor of defendant, R.B., as father of defendant, B.B., and the longstanding family relationship of these defendants. Examined from the perspective that plaintiff advances, however, the reality of plaintiff's presence and the revealing nature of defendant, T.B.'s letter of January 1995 shall always remain for these parties. Should defendant, B.B., wish to establish contact with plaintiff in the future that is a choice he alone can pursue. At this time, however plaintiff has not advanced by clear and convincing evidence to compel this case to proceed.
Having concluded plaintiff has not met his burden, the court need not consider defendants' argument that laches and equitable estoppel bar plaintiff's complaint. The court would only note that plaintiff correctly refers to N.J.S.A. 9:17-45(b) as requiring that an action to establish paternity must be brought within five years of the child attaining majority. In Wingate v. Estate of Ryan, 149 N.J. 227, 233, 693 A.2d 457 (1997) our State Supreme Court held that this statute "effectively imposes a twenty three year statute of repose for actions under the Parentage Act, running from the child's date of birth." Thus, the statutory scheme clearly precludes filing an action for paternity beyond a child's twenty-third year. Plaintiff has not demonstrated, by any persuasive argument, that the best interests standard is inapplicable or *142 becomes less relevant when the child is between the ages of eighteen and twenty three.
Therefore, the court grants defendants' motion to dismiss plaintiff's complaint. In conclusion, the parties should reflect upon this truism: "The law does not require or prohibit love or kindness. It deals only with legal rights and duties", In re Adoption of A. 118 N.J.Super. 180, 183, 286 A.2d 751 (Cty. Ct.1972).
NOTES
[1] The court is asked to consider all of the factors which weigh upon the issue of the benefit or detriment of the child. Among these factors are the following: 1) Harm to the child such as emotional injury, distrust, and possible confusion of knowing the parenting father is not the biological father; 2) Protection of the child's physical, mental, and emotional needs; 3) The stability of the family relationship and extent of the intrusion that will result from a paternity determination; 4) The consistency of the putative father's interest in the child; 5) Societal stigma that may result or be perceived by establishing relationship, including placing the child's birth outside of the traditional wedlock setting; 6) Continuity of established relationships; 7) Any extent to which uncertainty of parentage already exists in the child's mind; and 8) The child's interest in knowing family and genetic background, including medical and emotional history. M.F., supra, 252 N.J.Super. at 429-430, 599 A.2d 1297.