753 A.2d 1257 (2000)
332 N.J. Super. 593
In the Matter of the ESTATE OF William J. KOLACY, Deceased.
Superior Court of New Jersey, Chancery Division, Morris County.
Decided March 31, 2000.
*1258 Robert J. Kerekes, Clark, for plaintiff.
Beth Leigh Mitchell, Deputy Attorney General, for the State of New Jersey.
STANTON, A.J.S.C.
On March 31, 2000, I delivered an oral opinion declaring that Amanda Kolacy and Elyse Kolacy, three year old girls who are residents of New Jersey, are the heirs of their father William Kolacy, even though they were born eighteen months after his death. This opinion supersedes my earlier oral opinion.
The plaintiff in this action is Mariantonia Kolacy. She has brought this action to obtain a declaration that her two children, Amanda and Elyse, have the status of intestate heirs of her late husband, William J. Kolacy. Because this action involves a claim that one or more statutes of the State of New Jersey are unconstitutional, the Attorney General of New Jersey was notified of the action and has appeared through a Deputy Attorney General to defend the constitutionality of the state statutes involved.
On February 7, 1994, William J. Kolacy and Mariantonia Kolacy were a young married couple living in Rockaway, New Jersey. On that date, William Kolacy was diagnosed as having leukemia and he was advised to start chemotherapy as quickly as possible. He feared that he would be rendered infertile by the disease or by the treatment for the disease, so he decided to place his sperm in the Sperm and Embryo Bank of NJ. On the morning of February 8, 1994, William Kolacy and Mariantonia Kolacy harvested his sperm and Mariantonia Kolacy delivered it to the sperm bank. Later that day, the chemotherapy began. After the chemotherapy had been in progress for one month, a second harvesting of sperm occurred and was placed in the sperm bank.
Unfortunately, William Kolacy's leukemia led to his death at the age of 26 on April 15, 1995. He died domiciled in New Jersey. On April 3, 1996, almost a year after the death of William Kolacy, plaintiff Mariantonia Kolacy authorized the release of his sperm from the Sperm and Embryo Bank of NJ to the Center for Reproductive Medicine and Infertility at Cornell University Medical College in New York City. An IVF fertilization procedure uniting the sperm of William Kolacy and eggs taken from Mariantonia Kolacy was performed at the Center. The procedure was successful and the embryos which resulted were transferred into the womb of Mariantonia Kolacy. Twin girls, Amanda and Elyse, were born to Mariantonia Kolacy on November 3, 1996. The births occurred slightly more than eighteen months after the death of William Kolacy.
I find that the certifications submitted by Mariantonia Kolacy and Dr. Isaac Kligman of the Center for Reproductive Medicine and Infertility are fully credible and that they firmly establish the facts set forth above. Accordingly, it is clear that *1259 Amanda and Elyse Kolacy are genetically and biologically the children of William Kolacy.
In Paragraphs 7 through 9 of the verified complaint in this action, the plaintiff states her reasons for bringing this action as follows:
"7. The Social Security Administration has denied dependent benefits to Amanda and Elyse Kolacy contending they are not children of a deceased worker. On November 16, 1999 Administrative Law Judge Richard L. De Steno upheld the denial of benefits in a written decision.
8. Section 216 of the Social Security Act provides, inter alia, that `[c]hild's insurance benefits can be paid to a child who could inherit under the State's intestate laws.'
9. Plaintiff seeks a declaration that her daughters, posthumously conceived utilizing the late William J. Kolacy's stored sperm, are among the class of persons who are his intestate heirs so as to pursue her claim for child's insurance benefits on behalf of the decedent's children under the Social Security Act."
Plaintiff is currently pursuing her claims and those of the children through appellate process within the Social Security Administration, and, if necessary, will eventually litigate them in the federal courts. In bringing this action in the Superior Court, the plaintiff is attempting to obtain a state court ruling which will be helpful to her in pursuing her federal claims before a federal administrative agency and before the federal courts.
The State of New Jersey, speaking through the Deputy Attorney General appearing in this action, has urged me not to adjudicate this case. The State argues that the plaintiff's claim really is not justiciable in this court. The argument is that plaintiff is basically seeking to assert federal rights before federal tribunals and that she should be restricted to presenting her case before federal tribunals. Those tribunals, of course, are capable of looking at New Jersey law and of making perfectly intelligent judgments with respect to it. The State, in effect, argues that it would be an inappropriate intrusion on federal adjudicatory processes for me to become involved in determining the status of Amanda and Elyse Kolacy.
The ultimate question of whether Amanda and Elyse Kolacy are entitled to Social Security benefits is something which is exclusively a matter for federal tribunals. Even if I were to determine that the children are the heirs of William Kolacy under New Jersey law, it does not necessarily follow that they would be entitled to benefits under the Social Security Act, because there are important federal policy considerations which are applicable and which do not involve merely the status of the children as heirs under New Jersey law. However, the interpretation of New Jersey statutes and the determination of what New Jersey law is are primarily the responsibility of New Jersey courts. Federal courts routinely look to state courts for authoritative rulings with respect to state law. See generally, Elkins v. Moreno, 435 U.S . 647, 98 S.Ct. 1338, 55 L.Ed.2d 614 (1978); Cotton States Mutual Ins. Co. v. Anderson, 749 F.2d 663 (11th Cir.1984). In the case before me, a proper determination of what New Jersey law is will not necessarily be dispositive of the rights of plaintiff and the children under federal law, and it would not be appropriate for a state court to intrude into federal adjudicatory processes. On the other hand, it would clearly be unfortunate for those federal adjudicatory processes to reach a result based in part upon an incorrect determination by federal tribunals of New Jersey law. Accordingly, even if this action is viewed primarily as an adjunct to claims asserted in federal proceedings, it is appropriate for me to interpret New Jersey statutory law as it applies to Amanda and Elyse Kolacy.
I also note that, entirely aside from claims being asserted with respect to Social *1260 Security benefits, Amanda and Elyse are entitled to have their status as heirs of their father determined for a variety of state law purposes. The State argues that, because William Kolacy left no assets and thus had no estate at the time of his death, there is really no point in determining who are his heirs under New Jersey law. William Kolacy died without a will, but he did not leave any assets which would pass under the intestate laws of New Jersey. His assets were modest because of his young age and because of the difficult economic stresses that were placed upon him and his wife by his illness. Such assets as he had passed to his wife because of the joint ownership of property. Therefore, a determination that Amanda and Elyse were his heirs would not presently entitle them to any property under intestate law.
However, a present determination of their status as heirs is appropriate because of the effect it has on their general legal and social status and because of the impact which it may have upon property rights as they evolve over a period of time. For one thing, it is conceivable, though not very likely, that William Kolacy might have an estate because of assets passing to him at a future date. More realistically, a determination that the children are the heirs of William Kolacy could be significant in terms of their rights to take from his parents or from his collateral relatives in the event that one or more of those persons were to die intestate. Their status as his heirs could also be significant in determining their rights under the wills of their father's relatives. Thus, for a variety of estate law purposes, there is a present real utility to a declaration of the inheritance status of Amanda and Elyse. I will therefore entertain this action and I will make a ruling with respect to whether Amanda and Elyse legally qualify as the heirs of William Kolacy. See New Jersey Citizen Action v. Riviera Motel Corp., 296 N.J.Super. 402, 686 A.2d 1265 (App.Div.1997); New Jersey Home Builders Association v. Division of Civil Rights, 81 N.J.Super. 243, 195 A.2d 318 (Ch.Div.1963).
There are no New Jersey decisions dealing with the central issue presented in this casewhether Amanda and Elyse Kolacy, conceived after the death of their biological father and born more than eighteen months after his death, qualify as his heirs under state intestate law. I have not been able to find any American appellate court decisions dealing with that central issue.
Counsel have discussed at some length N.J.S.A. 3B:5-8, which is the New Jersey statute dealing with after born heirs. That statute provides as follows: "Relatives of the decedent conceived before his death but born thereafter inherit as if they had been born in the lifetime of the decedent." Counsel for plaintiff argues that this statute, as applied to children such as Amanda and Elyse Kolacy, is unconstitutional because "the effect of the statute as to posthumously conceived children is to both invidiously and irrationally discriminate against them." My view is that the constitutional argument against this statute is fundamentally misplaced and that it really is not necessary to reach the issue of whether this statute is constitutional.
A brief discussion of elementary estate law concepts is appropriate at this point. When a person dies, whether he dies leaving a will or whether he dies intestate, there is a real life need and a legal need to determine which persons are entitled to take his estate, and when that determination is made the general policy is to deliver to those persons rather promptly the property to which they are entitled. Thus, the identity of people who will take property from a decedent has traditionally been determined as of the date of the decedent's death.
However, there have long been exceptions to the rule that the identity of takers from a decedent's estate is determined as of the date of death. Those exceptions are based on human experience *1261 going back to time immemorial. We have always been aware that men sometimes cause a woman to become pregnant and then die before the pregnancy comes to term and a child is born. It has always been routine human experience that men sometimes have children after they die. To deal fairly with this reality, decisional law and statutory law have long recognized that it is appropriate to hold the process of identifying takers from a decedent's estate open long enough to allow after born children to receive property from and through their father. See Byerly v. Tolbert, 250 N.C. 27, 108 S.E.2d 29 (1959); Baugh v. Baugh, 25 Kan.App.2d 871, 973 P.2d 202 (1999).
Aside from the fact that a man sometimes dies before his child is born, there is the fact that when any person dies, a woman related to that decedent may be pregnant with a child who upon birth will qualify as a member of a class of persons entitled to take property from the decedent. The law has traditionally held the class of persons entitled to take from the decedent open long enough to allow a child who was being carried in his or her mother's womb at the time of the decedent's death to receive a share of the property. See Estate of Wolyniec v. Moe, 94 N.J.Super. 43, 226 A.2d 743 (Ch.Div.1967); Chemical Bank & Trust Company v. Godfrey, 29 N.J.Super. 226, 102 A.2d 108 (Ch.Div.1953).
N.J.S.A. 3B:5-8 is part of that traditional recognition of exceptions to the rule that takers from a decedent's estate should be determined as of the date of the decedent's death. N.J.S.A. 3B:5-8 was enacted in 1981 as part of a fairly broad reorganization of statutory law dealing with decedents' estates. In 1981, reproductive technology had advanced to the point that it is conceivable that the legislature might have been aware of the kind of problem posed by our present case. However, the relevant legislative history indicates that the current statute was simply a carryover of earlier statutes going back to at least 1877. The simple fact is that when the legislature adopted N.J.S.A. 3B:5-8 it was not giving any thought whatever to the kind of problem we have in this case. To the extent that there was a conscious legislative intent about reproductive processes involved, the intent was undoubtedly to deal fairly and sensibly with children resulting from traditional sexual activity in which a man directly deposits sperm into the body of a woman. With one exception mentioned hereafter, the New Jersey Legislature has never addressed the problems posed in estate law by current human reproductive technology.
The ability to remove sperm and eggs from human beings and to preserve their viability by storing them for long periods of time at low temperatures makes it possible for children to come into existence as the genetic and biological offspring of a father or of a mother who has long since been dead. My impression is that it is now possible to preserve the viability of human genetic material for as long as ten years. It is likely that the time will be extended in the future. The evolving human productive technology opens up some wonderful possibilities, but it also creates difficult issues and potential problems in many areas. It would undoubtedly be useful for the Legislature to deal consciously and in a well informed way with at least some of the issues presented by reproductive technology.
The State has urged that courts should not entertain actions such as the present one, but should wait until the Legislature has dealt with the kinds of issues presented by this case. As indicated above, I think it would be helpful for the Legislature to deal with these kinds of issues. In the meanwhile, life goes on, and people come into the courts seeking redress for present problems. We judges cannot simply put those problems on hold in the hope that some day (which may never come) the Legislature will deal with the problem in question. Simple justice requires us to do the best we can with the *1262 statutory law which is presently available. As I look at N.J.S.A. 3B:5-8 and other statutory provisions dealing with intestate succession, I discern a basic legislative intent to enable children to take property from their parents and through their parents from parental relatives. Although the Legislature has not dealt with the kind of issue presented by children such as Amanda and Elyse, it has manifested a general intent that the children of a decedent should be amply provided for with respect to property passing from him or through him as the result of a death. It is my view that the general intent should prevail over a restrictive, literal reading of statutes which did not consciously purport to deal with the kind of problem before us.
Given that general legislative intent, it seems to me that once we establish, as we have in this case, that a child is indeed the offspring of a decedent, we should routinely grant that child the legal status of being an heir of the decedent, unless doing so would unfairly intrude on the rights of other persons or would cause serious problems in terms of the orderly administration of estates.
I note that after born children who come into existence because of modern reproductive techniques pose special challenges to society and to our legal system. Historically, after born children were conceived and in their mother's womb at the time of a decedent's death and they could be counted on to appear no later than approximately nine months after that death. Now they can appear after the death of either a mother or a father and they can appear a number of years after that death. Estates cannot be held open for years simply to allow for the possibility that after born children may come into existence. People alive at the time of a decedent's death who are entitled to receive property from the decedent's estate are entitled to receive it reasonably promptly. It would undoubtedly be both fair and constitutional for a Legislature to impose time limits and other situationally described limits on the ability of after born children to take from or through a parent. In the absence of legislative provision in that regard, it would undoubtedly be fair and constitutional for courts to impose limits on the ability of after born children to take in particular cases.
In our present case, there are no estate administration problems involved and there are no competing interests of other persons who were alive at the time of William Kolacy's death which would be unfairly frustrated by recognizing Amanda and Elyse as his heirs. Even in situations where competing interests such as other children born during the lifetime of the decedent are in existence at the time of his death, it might be possible to accommodate those interests with the interests of after born children. For example, by statutory provision or decisional rule, payments made in the course of routine estate administration before the advent of after born children could be treated as vested and left undisturbed, while distributions made following the birth of after born children could be made to both categories of children.
There has been some discussion in this case of the possible impact of the New Jersey Parentage Act, N.J.S.A. 9:17-38 to -59. That act is very important in dealing with problems posed by fathers seeking to avoid their responsibility for the support of children, and it also deals with a number of other parentage issues. But most of its provisions are not even remotely relevant to the kind of issues posed by our present case.
One provision of the Parentage Act which is facially somewhat relevant to our case is N.J.S.A. 9:17-43a(1) which reads: "A man is presumed to be the biological father of a child if: He and the child's biological mother are or have been married to each other and the child is born during the marriage, or within 300 days after the marriage is terminated by death, annulment or divorce." This provision *1263 might arguably be interpreted as creating the reverse presumption that a child born more than 300 days after the death of a man shall be presumed not to be the biological child of the deceased man. I think that treating the cited provision as creating such a reverse presumption of non-parentage would be somewhat strained because it is counterproductive to the purposes of the act, but even if such a reverse presumption is read into the act, it is subject to being rebutted by clear and convincing factual evidence. In our present case, there is clear and convincing evidence that Amanda and Elyse are the biological children of William Kolacy.
It is interesting to note that there is one section of the Parentage Act in which the Legislature does deal explicitly with parentage issues (and derivative estate law issues) posed by new reproductive technology. That section is N.J.S.A. 9:17-44, which reads in pertinent part:
a. If under the supervision of a licensed physician and with the consent of her husband, a wife is inseminated artificially with semen donated by a man not her husband, the husband is treated in law as if he were the natural father of a child thereby conceived. The husband's consent shall be in writing and signed by him and his wife....
b. Unless the donor of semen and the woman have entered into a written contract to the contrary, the donor of semen provided to a licensed physician for use in the artificial insemination of a woman other than the donor's wife is treated in law as if he were not the father of a child thereby conceived and shall have no rights or duties stemming from the conception of a child.
This legislative treatment of certain issues arising out of reproductive technology is interesting and sensible. But it does not deal expressly with posthumous conception, and, more importantly, it does not deal with sperm contributed by the husband of the woman giving birth to a child. It is not relevant to the facts of our present case.
The ability to cause children to come into existence long after the death of a parent is a recently acquired ability for human society. There are probably wise and wonderful ways in which that ability can be used. There are also undoubtedly some special problems that the exercise of that ability might pose. There are, I think, ethical problems, social policy problems and legal problems which are presented when a child is brought into existence under circumstances where a traditionally normal parenting situation is not available. One would hope that a prospective parent thinking about causing a child to come into existence after the death of a genetic and biological parent would think very carefully about the potential consequences of doing that. The law should certainly be cautious about encouraging parents to move precipitously in this area.
I accept as true Mariantonia Kolacy's statement that her husband unequivocally expressed his desire that she use his stored sperm after his death to bear his children. She did, in fact, use his sperm to bear his children. Some may question the wisdom of such a course of action, but one can certainly understand why a loving and caring couple in the Kolacys' position might choose it. Be all that as it may, once a child has come into existence, she is a full-fledged human being and is entitled to all of the love, respect, dignity and legal protection which that status requires. It seems to me that a fundamental policy of the law should be to enhance and enlarge the rights of each human being to the maximum extent possible, consistent with the duty not to intrude unfairly upon the interests of other persons. Given that viewpoint, and given the facts of this case, including particularly the fact that William *1264 Kolacy by his intentional conduct created the possibility of having long-delayed after born children, I believe it is entirely fitting to recognize that Amanda and Elyse Kolacy are the legal heirs of William Kolacy under the intestate laws of New Jersey.