848 A.2d 761

FERESHTEH FAZILAT, PLAINTIFF–APPELLANT, v. NATHAN FELDSTEIN, DECEASED AND ESTATE OF NATHAN FELDSTEIN, DEFENDANTS–RESPONDENTS.

Argued April 26, 2004—Decided May 27, 2004.

*James A. Schragger* argued the cause for appellant (*Schragger, Schragger & Lavine,* attorneys).

*Karen L. Steinbach* argued the cause for respondents (*Pellettieri, Rabstein and Altman,* attorneys; *Mr. Steinbach* and *John A. Hartmann, III,* on the briefs).

Justice LONG delivered the opinion of the Court.

On this appeal, we have been asked to determine whether a plaintiff should be permitted to pursue an action for a declaration of paternity and child support against a decedent's fully distributed estate. Resolution of that issue requires us to analyze the interplay between the New Jersey Parentage Act, *N.J.S.A.* 9:17– 38 to –59, and the Administration of Estates of Decedents and Others Act, *N.J.S.A.* 3B:1–1 to 3B:29–1 (Probate Code), in light of the public policy implications undergirding each. We hold that the paternity action may proceed but that the claim for child support is barred.

I

■ Because the case comes to us on appeal from a grant of a motion to dismiss, we view the facts presented in a light most favorable to the non-moving party to determine whether a genuine issue of fact exists for trial. *Printing Mart–Morristown v. Sharp Elecs. Corp.,* 116 *N.J.* 739, 746, 563 *A.*2d 31 (1989). So viewed, the facts are as follows: In 1992, plaintiff Fereshteh Fazilat began an intimate relationship with defendant Nathan Feldstein, a married man. Sometime prior to 1995, Fazilat moved to New York City and was financially supported by Feldstein. In October 1995, Fazilat informed Feldstein that she was pregnant with his child. Feldstein looked forward to the child's birth and chose her name, Elisabeth. On June 19, 1996, Elisabeth was born. Feldstein was named as her father on the birth certificate.

In July and August 1996, Feldstein visited Elisabeth and bought her clothes, furniture, and toys. Feldstein informed Fazilat that

he would not differentiate between Elisabeth and his other children. He expressed the desire to continue to support Elisabeth, but no formal paternity recognition or child support was ever established.

Feldstein died of pancreatic cancer on October 9, 1996. His will was probated on December 13, 1996. It treated all of his children equally by making no provision for any of them. Feldstein's entire estate passed to his wife under the will. The estate was closed and the final assets were distributed late in 1997.

In October 1996, after Fazilat learned Feldstein had died, she moved with Elisabeth to Canada. Twenty-one months after Feldstein's death, on July 2, 1998, Fazilat's New Jersey counsel contacted Edwin Leavitt–Gruberger, an attorney serving as Feldstein's estate's representative, seeking child support for Elisabeth. On July 17, 1998, Gruberger informed Fazilat that "[n]o provision was made for [Elisabeth], nor was it required." He added that those responsible for Feldstein's estate would "not consider any suggestion of any claim of paternity or support" for Elisabeth.

On September 9, 1998, Fazilat's Canadian attorney contacted Gruberger requesting that Feldstein's wife and three adult children volunteer to submit to DNA testing to determine paternity. Gruberger refused. On November 29, 1999, Fazilat filed a complaint for paternity and support against Feldstein's estate in the Ontario Court of Justice. After a hearing, the court dismissed the application on the ground that it had no authority to order support and no jurisdiction to issue a declaration of paternity.

Eleven months later, Fazilat filed a complaint in New Jersey against Feldstein and his estate (collectively, "the estate"). The estate moved to dismiss the complaint. The trial court granted the motion, noting that although Fazilat's claims survived Feldstein's death, her failure to file against his estate within the six months permitted by the Probate Code precluded monetary relief and that the issue of paternity was thus irrelevant.

The Appellate Division affirmed. In so doing, it acknowledged that although the Parentage Act permitted actions after the death of the alleged father, the instant matter was not remediable because claims against the assets of an estate must satisfy the period of limitations established under the Probate Code. The court also questioned whether Fazilat could receive any benefit from a declaration of paternity in light of the fact that Elisabeth already was receiving Social Security through Feldstein. We granted certification, 178 *N.J.* 375, 840 *A*.2d 260 (2003), and now affirm in part and reverse in part.

## II

The parties renew the arguments advanced before the courts below. Fazilat essentially contends that her paternity claim was timely and should have been permitted to proceed because it involves more than finances and has psychological implications for Elisabeth. She further argues that a parent's obligation to support his minor child survives his death.

The estate counters that although the paternity claim was timely under the Parentage Act, it was outside the time allotted by the Probate Code. The estate characterizes Fazilat's claim as mainly a monetary one against a closed estate, the allowance of which would violate the public policy underpinnings of the Probate Code.

## III

We turn first to Fazilat's claim regarding entitlement to support from the estate. The preliminary question presented by that claim is whether there is any authority whatsoever to hold an estate liable for a decedent's support obligations. The answer to that question is yes.

For example, citing *N.J.S.A.* 2A:34-23 (statute authorizing alimony and support orders), this Court has held that when equity demands it, a court may "enter a support order for minor children

to survive their father's death. . . ." *Grotsky v. Grotsky*, 58 *N.J.* 354, 361, 277 *A.*2d 535 (1971). More recently, we concluded that that statutory scheme suggests that courts have the authority to enter "reasonable and equitable support orders" directly against a parent's estate. *Kiken v. Kiken*, 149 *N.J.* 441, 453, 694 *A.*2d 557 (1997). Relying on *N.J.S.A.* 2A:34-25, which expressly terminates the duty to pay alimony on the death of an obligor, we noted that in the child support context no such provision exists. *Id.* at 451, 694 *A.*2d 557.

Likewise in *Raynor v. Raynor*, 319 *N.J.Super.* 591, 595, 726 *A.*2d 280 (App.Div.1999), the court held that the proceeds of a life insurance policy designating decedent's wife as a beneficiary could be considered in the evaluation of the estate's obligation to provide continuing support to the child. Similarly, in *Koidl v. Schreiber*, 214 *N.J.Super.* 513, 516–17, 520 *A.*2d 759 (App.Div.1986), the court held that although children may have no right to participate in their father's estate, they do have the right to petition the court to enforce a preexisting support order against the estate.

In *DeCeglia v. Estate of Colletti*, 265 *N.J.Super.* 128, 625 *A.*2d 590 (App.Div.1993), the decedent had expressed a clear intent to create a will and to alter the beneficiary under his life insurance policy in order to provide for the plaintiff, his fiancée, and his soon-to-be-born child. *Id.* at 131–32, 625 *A.*2d 590. He died, however, one month before his daughter was born and prior to being able to draft a will and effectuate the change in his insurance policy. *Id.* at 132, 625 *A.*2d 590. The court concluded that under those circumstances equity called " 'for [entry of] a support order . . . to survive [the] father's death.' " *Id.* at 140, 625 *A.*2d 590 (quoting *Grotsky, supra*, 58 *N.J.* at 361, 277 *A.*2d 535).

In *Black v. Walker*, 295 *N.J.Super.* 244, 252, 684 *A.*2d 1011 (App.Div.1996), the decedent died after the trial court ordered him to contribute to his child's college expenses, but before an order was executed. The trial court entered the order against decedent's estate and the Appellate Division affirmed, likely because

all but the ministerial act of executing the order had been carried out.

Here, the question is a more nuanced one: whether a decedent's obligation can be enforced against an estate that has been closed and fully distributed. It is in connection with that question that the reciprocal relationship between the Parentage Act and the Probate Act comes to the fore.

### A.

■ The Parentage Act, which is modeled after the Uniform Parentage Act of 1973, was enacted "to establish the principle that regardless of the marital status of the parents, all children and parents have equal rights with respect to each other and to provide a procedure to establish parentage in disputed cases." Assembly Judiciary, Law, Public Safety and Defense Committee, *Statement to Senate Bill No. 888,* at 1 (Oct. 7, 1982). The New Jersey Parentage Act helps families deal with the problems posed by fathers who seek to avoid paying child support. *In re Estate of Kolacy,* 332 *N.J.Super.* 593, 603, 753 *A.*2d 1257 (Ch.Div.2000). The term "parent and child relationship" is defined as the "legal relationship existing between a child and the child's natural or adoptive parents, incident to which the law confers or imposes rights, privileges, duties, and obligations." *N.J.S.A.* 9:17–39. A claim brought under the Parentage Act may not be instituted more than five years after the claimant reaches the age of majority, thus providing a twenty-three year window to file. *N.J.S.A.* 9:17–45b. Such claims are not abated by the putative father's death and may be instituted or continued against the father's estate. *N.J.S.A.* 9:17–45c.

### B.

■ The Probate Code has as its goal the State's long-standing interest in securing "the speedy settlement of decedent[s'] es- tate[s]." *Robinson v. Hodge,* 4 *N.J.* 397, 405, 73 *A.*2d 158 (1950). Indeed, it is well-established that the State's interest in finality

and in the orderly disposition of estates justifies the application of limits to bar belated claims even if they are meritorious. *Reed v. Campbell,* 476 *U.S.* 852, 855–56, 106 *S.Ct.* 2234, 90 *L.Ed.*2d 858 (1986). Such limitations have existed for well over a century. *See, e.g., Provident Inst. for Sav. in Jersey City v. West Bergen Trust Co.,* 126 *N.J.L.* 595, 595–96, 20 *A.*2d 437 (E. & A.1941). In general, they serve to "bar belated creditors from participating in the orderly settlement of the estate," *Hodge, supra,* 4 *N.J.* at 405, 73 *A.*2d 158, and to provide the decedent's personal representative with a procedure to "make an orderly determination of [the] estate's liabilities and assets," *Pitale v. Leroy Holding Co.,* 65 *N.J.Super.* 361, 365–66, 167 *A.*2d 828 (Ch.Div.1961).

The Probate Code mandates that claims against an estate must be presented within six months after the granting of "letters testamentary or of administration...." *N.J.S.A.* 3B:22–4. Claims filed out of time under the Probate Code may nevertheless be presented "any time *before* the remaining assets of the estate shall have been distributed or paid over pursuant to law." *N.J.S.A.* 3B:22–10 (emphasis added).

### C.

In *Wingate v. Estate of Ryan,* 149 *N.J.* 227, 693 *A.*2d 457 (1997), we had occasion to address those limitations in a case involving the issue of parentage in a probate setting. There, the thirty-one year old plaintiff filed a timely intestacy action to prove parentage and heirship under *N.J.S.A.* 3B:5–10 of the Probate Code. The administratrix of decedent's estate did not contest parentage, but filed a motion for summary judgment on the basis that the plaintiff's claim was untimely under the twenty-three year limitation period provided in the Parentage Act. *Id.* at 230, 693 *A.*2d 457. The Family Part denied defendant's motion and the Appellate Division reversed holding that the twenty-three year limitation in the Parentage Act barred plaintiff's claim.

We concluded otherwise. In so doing, we explained that the Parentage Act and the Probate Code are "independent statutes

designed to address different primary rights"—the Parentage Act to establish the legal relationship between parents and children and the Probate Code to "determine the devolution of a decedent's real and personal property." *Id.* at 238, 693 *A.*2d 457. Moreover, whereas the rights of children to support accrue at birth, potential heirs have no rights until the decedent's death. Thus, we said:

> Applying *N.J.S.A.* 9:17–45(b) to actions under the Probate Code would create a statute of repose that commences on the birth of a potential heir, rather than a statute of limitations running from the decedent's death. Indeed, the Parentage Act provides that it does not affect the time within which an heirship claim must be filed. *N.J.S.A.* 9:17–45(f). That section provides further evidence that claims under the Probate Code and Parentage Act are subject to independent limitations periods. To hold otherwise would grant heirship immunity to parents of children who are born out of wedlock and do not establish parentage before reaching age twenty-three. That would terminate many claims before they accrue. *E.A. Williams, Inc. v. Russo Dev. Corp.,* 82 *N.J.* 160, 167 [411 *A.*2d 697] (1980). [*Wingate, supra,* 149 *N.J.* at 239–40, 693 *A.*2d 457.]

We also noted:

> Finally, the comment to the limitations provision of the *Uniform Parentage Act* § 7, 9B U.L.A. 306 (1987), is persuasive. That comment states that, "[i]n effect, ... this Section provides for a twenty-one-year statute of limitations, except that *a late paternity action does not affect laws relating to distribution and closing of decedents' estates or to the determination of heirship.*" *Ibid.* cmt. (emphasis added). Thus, the Uniform Parentage Act was not intended to affect the limitations period for actions to prove heirship.
> [*Wingate, supra,* 149 *N.J.* at 240, 693 *A.*2d 457.]

We concluded:

> Because our Parentage Act is modeled after the Uniform Parentage Act, and for the other reasons stated, we hold that the Legislature did not intend its 1991 amendment to change the Probate Code's limitation on when claims can be filed thereunder for determination of heirship.
> [*Ibid.*]

In a sense, *Wingate* is the flip-side of this case insofar as the twenty-three year statute of limitations in the Parentage Act was being used there as a shield by an estate against a timely claim whereas here it is being used as a sword by a plaintiff to salvage an untimely claim. Either way, *Wingate* stands for the proposition that the statutory limitations are distinct and that each applies to actions under its own statutory scheme but not to the other.

After *Wingate,* the Legislature amended *N.J.S.A.* 9:17–45 to underscore:

> f.  This section does not extend the time within which a right of inheritance or a right to succession may be asserted beyond the time provided by law relating to distribution and closing of decedents' estates or to the determination of heirship, or otherwise, *or limit any time period for the determination of any claims arising under the laws governing probate, including the construction of wills and trust instruments.*
>
> [*N.J.S.A.* 9:17–45(f) (emphasis added).]

In amending the statute, the Legislature declared its intent to clarify that "the provisions of the probate code *control* the limitations for claims on distribution of an intestate estate." Senate Women's Issues, Children and Family Services Committee, *Statement to Senate Bill No. 1253,* at 1 (Mar. 3, 1997). The bill statement likewise emphasized that "[t]he bill [wa]s not intended in any way to change any of the statute of limitations provided for in the probate code itself." Senator James S. Cafiero, *Sponsor's Statement,* S1253, at 2. Put another way, the Parentage Act does not affect the limitations set out in the Probate Code. *See In re Trust Created by Agreement Dated Dec. 20, 1961,* 166 *N.J.* 340, 355, 765 *A.*2d 746 (stating that Parentage Act was amended to clarify that its provisions do " 'not ... limit any time period for the determination of any claims arising under the laws governing probate' "), *cert. denied sub nom.,* 534 *U.S.* 889, 122 *S.Ct.* 203, 151 *L.Ed.*2d 143 (2001).

Once a claim for child support is filed against an estate it is subject to the provisions of the Probate Code regardless of whether it is brought under the Parentage Act or the Code. The Probate Code defines the term "claims" as including "liabilities whether arising in contract, or in tort or otherwise. . . ." *N.J.S.A.* 3B:1–1. A claim for child support, which would affect the devolution of an estate, is clearly included within that definition. *See N.J.S.A.* 3B:1–3; *Pitale, supra,* 65 *N.J.Super.* at 366, 167 *A.*2d 828 (stating that intent of Probate Code is to include "all claims enforceable by suit terminating in a money judgment"); *see also N.J.S.A.* 2A:4–30.65 (defining term "support order" under Uni-

form Interstate Family Support Act as "a judgment, decree, or order . . ., which provides for monetary support"). Thus, any such claim is governed by the limitations period in the Probate Code, making the one at issue here plainly out of time.

Fazilat's assertion that her claim is not subject to the Probate Code until paternity is established is unpersuasive. The Parentage Act specifically requires that paternity claims be joined with actions "for divorce, annulment, separate maintenance or support." *N.J.S.A.* 9:17–46. Moreover, because the trial court assumed paternity for purposes of the motion, a judgment of parentage was not essential to a determination of whether Fazilat's claim for support was timely.[1]

Fazilat's further contention that her delays should not be "held against" Elisabeth is equally unavailing. That is not what is occurring here. This case is not about punishing Fazilat for dilatory behavior. It is about our avowed public policy to encourage the speedy disposition of estates by barring belated claims even if they are meritorious. To recognize Elisabeth's claims against the estate brought under the Parentage Act would eviscerate the limitations period in the Probate Code and undercut completely its important public policy rationale. Just as we would not allow the twenty-three year limit in the Parentage Act to be invoked in *Wingate* to shield an estate against a timely heirship claim, we will not allow Fazilat to use it to save an untimely claim against Feldstein's estate.

Moreover, as a practical matter to reopen the estate approximately five years after it was closed would unfairly intrude on the rights of others and interfere with the State's interest in the orderly administration of estates, a state of affairs that should not be countenanced. *See Kolacy, supra,* 332 *N.J.Super.* at 602, 753

---

[1] Fazilat's contention that her claim was not subject to the Probate Code's limitations because the estate did not advertise for creditors under *N.J.S.A.* 3B:22–4 also fails. Advertising is not mandatory and, in any event, the trial court found it undisputed that the estate was properly probated.

A.2d 1257. In short, the Appellate Division correctly affirmed the trial court's dismissal of Fazilat's child support claim on the basis that the claim was time barred.

## IV

We turn next to Fazilat's claim of entitlement to a judgment of paternity on Elisabeth's behalf. It is here that we part company from the Appellate Division.

In enacting the Parentage Act, the Legislature intended to "make the identification of a child's father easier and thereby reduce[ ] the number of children requiring public assistance." Assembly Judiciary, Law, Public Safety and Defense Committee, *Statement to Senate Bill No. 888,* at 2 (Oct. 7, 1982). Part and parcel of that goal is the obvious interest parents have in paternity suits. Generally, that interest is expressed by way of a custodial parent's efforts to establish paternity and obtain support.

The child's interest, however, is much broader than that. *Hall v. Lalli,* 194 *Ariz.* 54, 977 *P.2d* 776, 781 (1999); *Kolacy, supra,* 332 *N.J.Super.* at 602, 753 *A.2d* 1257; *N.M. v. J.G.,* 255 *N.J.Super.* 423, 429–30, 605 *A.2d* 709 (App.Div.1992); *M.A. v. Estate of A.C.,* 274 *N.J.Super.* 245, 255, 643 *A.2d* 1047 (Ch.Div.1993); *Sanders v. Sanders,* 384 *Pa.Super.* 311, 558 *A.2d* 556, 561 n. 3 (1989). Indeed, it has been recognized that children who are deprived of learning their true parentage may suffer psychologically. *N.M., supra,* 255 *N.J.Super.* at 429–30, 605 *A.2d* 709; *M.A., supra,* 274 *N.J.Super.* at 255, 643 *A.2d* 1047; Kristin E. Koehler, Comment, *Artificial Insemination: In the Child's Best Interest?,* 5 *Alb. L.J. Sci. & Tech.* 321, 334 (1996) ("While children may not have a recognized legal right to know the identity of their biological father, sound mental-health practices support the advantages of access to such information.") (citing Annette Baran & Reuben Pannor, *Lethal Secrets: The Shocking Consequences and Unsolved Problems of Artificial Insemination* 167 (1989)).

In addition to contributing to a child's mental well being, a declaration of paternity may entitle a child to social security, veteran's or pension benefits, *M.A., supra,* 274 *N.J.Super.* at 255–56, 643 *A.2d* 1047, and inheritance rights, *id.* at 256, 643 *A.2d* 1047, such as the right "to take property . . . through their parents from parental relatives." *Kolacy, supra,* 332 *N.J.Super.* at 602, 753 *A.2d* 1257. The confirmation of one's lineage may also provide "medical benefits" by allowing the child to learn of the potential diseases and abnormalities he or she may inherit from parents and their forbears. *M.A., supra,* 274 *N.J.Super.* at 256, 643 *A.2d* 1047. Therefore, an accurate determination of parentage not only establishes a child's legitimacy and rights, but also results in intangible psychological and emotional benefits.

Accordingly, as in all matters dealing with children, the "fundamental guiding principle" when considering the issue of paternity is the "best interest of the child." *D.O. v. R.B.,* 317 *N.J.Super.* 367, 373, 722 *A.2d* 136 (Ch.Div.1997), *aff'd. o.b.,* 317 *N.J.Super.* 323, 722 *A.2d* 114 (App.Div.1998). Under the best interests analysis, a child's entitlement to a determination of parental lineage is distinct from a parent's efforts to obtain child support. *State v. Volk,* 280 *N.J.Super.* 57, 61, 654 *A.2d* 500 (App.Div.1995); *E.I.B. by I.J. v. J.R.B.,* 259 *N.J.Super.* 99, 104, 611 *A.2d* 662 (App.Div.), *certif. denied,* 130 *N.J.* 602, 617 *A.2d* 1223 (1992); *N.M., supra,* 255 *N.J.Super.* at 429–30, 605 *A.2d* 709.

Unlike Fazilat's claim for child support, the claim for a declaration of paternity is not subject to the time limitations established by the Probate Code. As noted in *Wingate,* the Probate Code is independent from the Parentage Act. Each addresses different primary rights. The issue of paternity is specifically governed by the Parentage Act. If proven, a declaration of paternity, and all of its legal rights and intangible benefits, is the only guaranteed relief. *N.J.S.A.* 9:17–53a. Thus, a declaration of paternity is not governed by the limits in the Probate Code. Indeed, the Appellate Division acknowledged the timeliness of Fazilat's paternity claim under the Parentage Act and the estate

has not disputed that fact, although it argues that the term "claim" in the Probate Code could broadly be read to include a paternity claim. We disagree with that characterization. A paternity judgment is simply not a "liability" as a claim is defined in the Probate Code. *N.J.S.A.* 3B:1–1.

Here, the trial court neglected to consider the best interests of Elisabeth in denying the application to establish paternity. The court's ruling was premised on its finding that Fazilat's child support claim was precluded. Although the Appellate Division acknowledged the timeliness of Fazilat's paternity claim, it concluded that a declaration of paternity was not warranted. That court reasoned that Fazilat had already obtained Social Security benefits for Elisabeth and could not point to any other monetary benefits "which would accrue to [her] from a declaration of paternity." In so ruling, the court short sightedly failed to consider the numerous distinct interests that may exist for Elisabeth if paternity is established.

In short, because Fazilat's allegations of paternity were never considered and Elisabeth's specific interests in paternity were never addressed on the merits, the matter should be remanded to the trial court for disposition.

## V

The judgment of the Appellate Division is affirmed in part and reversed in part. The dismissal of Fazilat's right to pursue child support is affirmed. The denial of right to pursue the paternity claim is reversed. The case is remanded to the trial court for proceedings consistent with this opinion.

*For affirmance in part/reversal in part/remandment*—Chief Justice PORITZ and Justices LONG, VERNIERO, LaVECCHIA, ZAZZALI, ALBIN and WALLACE—7.

*Opposed*—None.