*80 MAKILYN KELLY, J.
(concurring). I write separately to express my view that although the Court’s decision in this matter is accurate and required by the law, it is lamentable.
It is undisputed that the twins are Jeffery Mattison’s biological children in that his sperm were used to inseminate plaintiffs eggs. Yet Michigan intestacy law prevents these children from inheriting from their father and, as a consequence, from receiving social security survivors’ benefits. This is because our Legislature has not made provision for children conceived by assisted reproductive technology after a parent’s death to inherit from the parent by intestate succession. This situation will likely reoccur.
It is not known whether the Legislature has ever considered the problem presented here. If it had, it would have been confronted with the fact that gestation by assisted reproductive technology can occur long after the death of one parent. If the estate of the deceased parent had to remain open while the widow or widower contemplated the use of assisted reproductive technology, timely probating of the estate could be frustrated.[1]
Standing in contrast to that consideration is the fact that one goal of the Estates and Protected Individuals Code (EPIC)[2] is “[t]o discover and make effective a decedent’s intent in distribution of the decedent’s property.”[3] Two facts in this case relate to this goal: (1) the twins are undisputedly Jeffery’s children and (2) Jeffery executed a power of attorney appointing plaintiff as his attorney-in-fact with the power to “take any and all action necessary pertaining to any sperm or embryos *81 [he] may have stored including their implantation or termination.” Jeffery intended that any children conceived by in vitro fertilization using his sperm be entitled to the same rights as naturally conceived children, without regard to when they were conceived.
It is not the role of this Court to fashion a legal remedy allowing after-conceived children to inherit from a deceased parent by intestate succession. But the Legislature is capable of providing for it. For instance, the Legislature could provide for a limited period after a person’s death during which his or her spouse could arrange for a child to be conceived by assisted reproductive technology. It could provide that a child conceived within that period would be entitled to inherit from the deceased parent by intestate succession. Alternatively, the Legislature could mandate that the conception occur within a reasonable time after a spouse’s death in order for the child to be eligible to inherit.[4]
Some state legislatures have already grappled with the issue, while others have not, as summarized by this chart that also identifies the source of the law in each state:[5]
*82 Table 1: Approaches to Posthumously Conceived Children for Probate Purposes by Jurisdiction
Source1 [6] Includes Excludes Unclear Jurisdiction
1946 MPC 4 Indiana, Maryland, Ohio, Pennsylvania
1969 UPC 3 Maine, Nebraska, Tennessee
1988 USCACA Virginia
1990 UPC 8 Alaska, Arizona, Hawaii, Michigan, Montana, Vermont, West Virginia, Wisconsin
2000 UPA 7 Alabama, Delaware, New Mexico, Texas, Utah, Washington, Wyoming
2008 UPC Colorado, North Dakota
Other statute 12 Includes: California, Florida, Iowa, Louisiana Excludes-. Georgia, Idaho, Minnesota, South Carolina, South Dakota, New York Unclear-. Connecticut, District of Columbia, Illinois, Kansas, Missouri, Oklahoma, Kentucky North Carolina, Oregon, Rhode Island, Mississippi, Nevada
Caselaw Includes: Massachusetts Woodward.)[7] New Jersey (Kolacyy[8] Excludes: Arkansas CFinley);[9] New Hampshire (Khabbazy-[10]
_ Total 34
It is incumbent on the Legislature to keep our laws abreast of our times. This is especially true given the *83 “growing and complex area of nontraditional family life” and the increasing prevalence of assisted reproductive technology.[11]
For these reasons, I urge our Legislature to specifically address the issue presented in this case in the near future.
CAVANAGH, J., concurred with MARILYN KELLY, J.

 See MCL 700.1201(c).

 MCL 700.1101 et seq.

 MCL 700.1201(b).

 See, e.g., Carpenter, A chip off the old iceblock: How cryopreservation has changed estate law, why attempts to address the issue have fallen short, and how to fix it, 21 Cornell J L & Pub Policy 347, 380 (2011) (explaining that some states have enacted legislation that requires “(1) the decedent, in writing, [to] authorized the surviving spouse to use the genetic material, and (2) the child [to be] born within two years after the decedent’s death”).

 Id. at 403-404. See also Lorio, Conceiving the inconceivable: Legal recognition of the posthumously conceived child, 34 American College of Trust & Estate Counsel L J 154, 156-162 (2008). After Professor Benjamin Carpenter’s article was published in 2011, the Nebraska Supreme Court held that Nebraska’s statutes exclude posthumously conceived children from inheriting by intestate succession. See Amen v Astrue, 284 Neb 691; 822 NW2d 419 (2012).

 “MPC” stands for Model Probate Code. “UPC” stands for Uniform Probate Code. “USCACA” stands for Uniform Status of Children of Assisted Conception Act. “UPA” stands for Uniform Parentage Act.

 Woodward v Social Security Comm’r, 435 Mass 536; 760 NE2d 257 (2002).

 In re Kolacy Estate, 332 NJ Super 593; 753 A2d 1257 (2000).

 Finley v Astrue, 372 Ark 103; 270 SW3d 849 (2008).

 Khabbaz v Social Security Admin Comm’r, 155 NH 798; 930 A2d 1180 (2007).

 Messmer, Assisted reproductive technology: A lawyer’s guide to emerging law and science, 3 J Health & Biomed L 203, 204 (2007).