880 A.2d 1179 (2005)
380 N.J. Super. 94
R.A.C., Plaintiff-Appellant/Cross-Respondent,
v.
P.J.S., Jr., Defendant-Respondent/Cross-Appellant, and
B.E.C., Defendant-Respondent/Cross-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued December 13, 2004.
Decided August 31, 2005.
*1182 Anthony J. Marchetta, Florham Park, argued the cause for appellant/cross-respondent (Pitney, Hardin, Kipp & Szuch, *1183 attorneys; Mr. Marchetta, of counsel and on the brief; Brian E. Moffitt, on the brief).
Scott J. Bocker, Paterson, argued the cause for respondent/cross-appellant P.J.S., Jr., (Herman Osofsky, attorney; Mr. Bocker and Nancy C. Ferro, Ridgewood, on the brief).
William C. Dodd, Morristown, argued the cause for respondent/cross-respondent B.E.C. (Schenck, Price, Smith & King, attorneys; Mr. Dodd, of counsel and on the brief).
Before Judges A.A. RODRIGUEZ, CUFF and WEISSBARD.
The opinion of the court was delivered by
CUFF, J.A.D.
A year after being told that his youngest son, D.C., then thirty years of age, had been fathered by another man, R.A.C. (plaintiff) filed a complaint against P.J.S., Jr., (defendant) the natural father, pursuant to the Parentage Act.[1] He also sought damages for emotional distress. Following DNA testing, an order establishing parentage was entered; a summary judgment awarded plaintiff $109,696.82 representing the funds expended by plaintiff to support and educate D.C.
On appeal, plaintiff contends that the judge should not have dismissed his common law claims, should have allowed him to amend his complaint to assert an unjust enrichment claim, should have allowed post-emancipation educational expenses, and should have awarded attorneys' fees. In his cross-appeal, defendant argues that the Parentage Act claim is time-barred.
The facts are not complicated. Plaintiff and B.E.C. were married in 1957. Three children were born during the marriage. The third child, D.C. (D.C. or son), was born in October 1969.
Unknown to plaintiff, B.E.C. and defendant, were involved in an extra-marital affair. When she became pregnant, B.E.C. was virtually sure that plaintiff was not the father of the child in light of the state of their marriage. Plaintiff and B.E.C. and defendant and his wife were close personal friends. Therefore, when D.C. was born, plaintiff and B.E.C. asked defendant to be the godfather of their newborn son, and he agreed.
Shortly, after D.C.'s birth, defendant and his family moved to Florida. In 1980, plaintiff and B.E.C. were divorced. Plaintiff assumed an obligation to pay child support and educational expenses, and he discharged this obligation faithfully. He also maintained a close parental relationship with each child despite the divorce.
In July 1996, shortly before D.C. was to be married, his mother told him that defendant was his father. D.C. was twenty-seven years old at the time. B.E.C. told her son of his parentage because defendant's two children had muscular dystrophy. B.E.C. told D.C. that she would tell plaintiff.
Three years later, she did so. Plaintiff was in the area visiting his oldest son and they invited B.E.C. to dinner. In the course of the evening, B.E.C. told plaintiff that D.C. was not his son and that defendant had fathered her third son. Plaintiff testified that he was dumbfounded and shocked. He had difficulty coping with the news and was angry that B.E.C. and defendant had deceived him.
On September 18, 2000, plaintiff filed a complaint against defendant seeking a judgment that defendant was the biological father of D.C. and reimbursement for *1184 D.C.'s child support pursuant to the Parentage Act. He also alleged fraudulent concealment and intentional infliction of emotional distress and sought compensatory and punitive damages, interest and attorneys' fees. Plaintiff also named B.E.C. as a necessary party to the action.
Plaintiff filed a motion to compel defendant to submit to DNA testing. Defendant filed a cross-motion to dismiss the complaint. Judge Stephen Schaeffer ordered defendant to undergo DNA testing and denied his motion to dismiss the complaint. On April 4, 2002, the results of the DNA testing provided irrefutable proof that defendant was D.C.'s father. On June 30, 2002, a judge entered a judgment of paternity.
In February 2003, defendant moved for summary judgment as to the support issues and for leave to file a cross-claim against B.E.C. for contribution. Plaintiff opposed the motion and also sought leave to amend his complaint to add a claim of unjust enrichment. The judge issued several orders on June 16, 2003, supported by a written opinion. He dismissed plaintiff's claims for fraudulent concealment and intentional infliction of emotional distress, and limited plaintiff's claim for reimbursement of child support to when D.C. turned twenty-two and entered judgment in favor of plaintiff and against defendant in the amount of $109,696.82. He also denied plaintiff's claim for treble damages and his motion to amend the complaint to assert a claim of unjust enrichment. The judge denied plaintiff's claim for prejudgment interest and attorneys' fees, and he denied defendant's motion to assert a claim for contribution against B.E.C. It is from these various orders that plaintiff and defendant appeal.
The primary and novel issue in this appeal is whether plaintiff's claim under the Parentage Act is time-barred. It is undisputed here that plaintiff did not bring his action seeking to adjudicate D.C.'s paternity (and for monetary damages) until D.C. was almost thirty-one years old, or almost thirteen years after D.C. attained the age of majority. It is also undisputed (or at least for the purpose of the motion to dismiss, it was undisputed) that plaintiff did not learn of the possibility that he was not D.C.'s father until D.C. was almost thirty years old. D.C., who did not join in the action, did not learn of the cloud on his paternity until he was almost twenty-seven years old.
Defendant moved to dismiss the complaint as time-barred and to deny plaintiff's motion to compel him to undergo DNA testing. In denying this motion, Judge Schaeffer ruled that the statute was a shield to protect children from being bastardized and from having claims made after a certain point in time, and that it could not be used as a shield by a putative father to protect him from liability. That is, the statute was not intended to shield defendant from claims brought to protect a child and his family. The subsequent motion judge, adopted this reasoning.
Defendant argues that the express terms of the statute bar the action. Plaintiff responds that all information regarding the true parentage was known to him only after the time for commencement of such actions had expired, and that, singly or in combination, B.E.C. and defendant withheld information from him. Therefore, he contends that equity requires resort to the discovery rule to extend the time to commence this action. He also asserts that the limitation period of the statute was not designed to protect a person in the position of defendant. There are several sound principles in support of each position. Ultimately, however, the purpose of the statute and the facts of this case require a ruling that plaintiff's complaint *1185 under the Parentage Act is not time-barred.
The New Jersey Parentage Act (Parentage Act), enacted by the Legislature in 1983, is modeled after the Uniform Parentage Act (the UPA) promulgated by the National Conference of Commissioners on Uniform State Laws. Statement of the Assembly Judiciary, Law, Public Safety and Defense Committee on Senate Bill No. 888, L. 1983, c. 17 (reprinted in comments to N.J.S.A. 9:17-38). In enacting the statute, the Legislature "intended to establish the principle that regardless of the marital status of the parents, all children and parents have equal rights with respect to each other and to provide a procedure to establish parentage in disputed cases." Ibid.; accord, Fazilat v. Feldstein, 180 N.J. 74, 82, 848 A.2d 761 (2004); In re Trust Created by Agreement Dated December 20, 1961, 166 N.J. 340, 351, 765 A.2d 746, cert. denied sub nom. Ryan v. Johnson, 534 U.S. 889, 122 S.Ct. 203, 151 L.Ed.2d 143 (2001); Wingate v. Estate of Ryan, 149 N.J. 227, 233, 693 A.2d 457 (1997). The Parentage Act also "helps families deal with the problems posed by fathers who seek to avoid paying child support." Fazilat, supra, 180 N.J. at 82, 848 A.2d 761 (citing In re Estate of Kolacy, 332 N.J.Super. 593, 603, 753 A.2d 1257 (Ch.Div.2000)).
According to pertinent provisions of N.J.S.A. 9:17-45,
a. A child, a legal representative of the child, the natural mother, the estate or legal representative of the mother, if the mother has died or is a minor, a man alleged or alleging himself to be the father, the estate or legal representative of the alleged father, if the alleged father has died or is a minor, the Division of Family Development in the Department of Human Services, or the county welfare agency, or any person with an interest recognized as justiciable by the court may bring or defend an action or be made a party to an action at any time for the purpose of determining the existence or nonexistence of the parent and child relationship.

b. No action shall be brought under [the Parentage Act] more than 5 years after the child attains the age of majority. (emphasis added).
Section 45b effectively imposes a twenty-three-year statute of limitations for actions under the Parentage Act, running from the date of the child's birth. Fazilat, supra, 180 N.J. at 82, 848 A.2d 761; In re Trust Agreement Created December 20, 1961, supra, 166 N.J. at 353, 765 A.2d 746; Wingate, supra, 149 N.J. at 233, 693 A.2d 457.[2] Because child support is one of the major concerns of the Parentage Act, and because parents have a duty to support their children from the date of birth until the date of emancipation, it has been held that it is fair to allow such an extended filing date to claims for support. Wingate, supra, 149 N.J. at 238-39, 693 A.2d 457. The twenty-three-year period under section 45b balances a claimant's right to support with the State's interest in requiring the prompt filing of parentage actions. Id. at 239, 693 A.2d 457. Recent scientific *1186 developments in blood testing have sub stantially alleviated the need to protect against fraudulent claims. Id. at 241, 693 A.2d 457.
The Parentage Act was not in effect when D.C. was born. Under pre-1983 law, a bastardy proceeding was seen as a special statutory proceeding designed to determine the paternity of illegitimate children and to provide for their support. Eisler v. Toms, 160 N.J. Super. 272, 274, 389 A.2d 529 (J. & D.R. Ct.1978). There was no specific statute of limitations in effect for such proceedings, indicating that they were not barred by the lapse of time. Id. at 274-75, 389 A.2d 529. That is, because the primary purpose of a paternity proceeding was the support and education of the child, it was recognized that a parent's obligation to support his or her child terminated only when the child became of age and that the obligation of continuing support outweighed any consideration of repose. Ibid.
In fact, at common law there was "no obligation of a father to support his illegitimate children." State v. Clark, 58 N.J. 72, 83, 275 A.2d 137 (1971). The duty of both parents to provide such support was imposed by statute, specifically at Chapters 16 (custody and support) and 17 (bastardy proceedings) of Title 9 (repealed by the Parentage Act, L. 1983, c. 17, § 23, effective May 21, 1983). Originally, only the government welfare agency providing support for a needy child was authorized to institute a proceeding against a putative father of an illegitimate child, but the statute was amended in 1929 to allow the mother to bring an action both to determine paternity and to enforce the father's support obligation. Clark, supra, 58 N.J. at 83, 275 A.2d 137 (citations omitted).
Our resolution of the precise issue before us requires a discussion of statutes that limit causes of action. There are two different types of statutes of limitation. A procedural or remedial statute governs general causes of action that were recognized under the common law. They bar only the remedy and not the right that existed at common law. LaFage v. Jani, 166 N.J. 412, 421-22, 766 A.2d 1066 (2001); White v. Violent Crimes Comp. Bd., 76 N.J. 368, 374, 388 A.2d 206 (1978). A substantive or jurisdictional "statute of limitations is found in legislation creating a cause of action that did not exist at common law." LaFage, supra, 166 N.J. at 421, 766 A.2d 1066. "[W]here the time in which an action must be commenced expires, both the remedy and the right are barred." Id. at 422, 766 A.2d 1066; White, supra, 76 N.J. at 374, 388 A.2d 206. "Special limitations periods are generally deemed substantive when they are created concurrently with a novel cause of action." White, supra, 76 N.J. at 375, 388 A.2d 206. Such limitations periods are generally not subject to extension of tolling. Ibid.
To ameliorate the harsh impact of limitations provisions, our Supreme Court has adopted equitable doctrines that may extend the time for filing a claim beyond what would be allowed under a rigid application of the statute of limitations. See, e.g., LaFage, supra, 166 N.J. at 420-31, 766 A.2d 1066 (equitable tolling); Negron v. Llarena, 156 N.J. 296, 304-05, 716 A.2d 1158 (1998) (substantial compliance); Lopez v. Swyer, 62 N.J. 267, 273-76, 300 A.2d 563 (1973) (discovery rule); see also Bernoskie v. Zarinsky, 344 N.J.Super. 160, 164, 781 A.2d 52 (App.Div.2001) (statute of limitations on wrongful death and survivorship action equitably tolled because the alleged killers of plaintiff's husband escaped detection and apprehension for more than forty years). These doctrines have been applied to both procedural and substantive statutes of limitations. Id. at 165, 781 A.2d 52. In the case of a statutorily *1187 created right, a substantive limitations period may be tolled in a particular set of circumstances or when appropriate if the legislative purpose underlying the statutory scheme would thereby be effectuated. LaFage, supra, 166 N.J. at 422, 766 A.2d 1066; White, supra, 76 N.J. at 379, 388 A.2d 206.
Here, we conclude that the statute of limitations provided in the Parentage Act is a substantive statute since it applies to a cause of action not recognized at common law, and was enacted concurrently with the novel cause of action created. Although equitable doctrines may be applied to such a statute, any application would have to be made with reference to the legislative purpose underlying the statutory scheme.
One such doctrine urged by plaintiff is the discovery rule. This rule states that a cause of action does not accrue until the plaintiff discovers, "or by exercise of reasonable diligence and intelligence should have discovered, facts which form the basis of a cause of action." O'Keeffe v. Snyder, 83 N.J. 478, 491, 416 A.2d 862 (1980) (citing Burd v. N.J. Tel. Co., 76 N.J. 284, 291-92, 386 A.2d 1310 (1978)).
However, the rule has been held to apply only where the cause of action is one subject to a period of limitations measured by accrual rather than by the occurrence of a fixed, specified, or objective event. Brookins v. Murray, 131 N.J. 141, 151, 619 A.2d 583 (1993); Bernoskie, supra, 344 N.J.Super. at 165, 781 A.2d 52; Mancuso v. Mancuso, 209 N.J.Super. 51, 56, 506 A.2d 1253 (App.Div.1986). For example, causes of action for libel, the design and construction of real property improvements, wrongful death, PIP benefits, and workers' compensation, are all subject to limitations periods measured by the occurrence of fixed events as to which the discovery rule has been held not to apply. Brookins, supra, 131 N.J. at 151, 619 A.2d 583; Mancuso, supra, 209. N.J.Super. at 56, 506 A.2d 1253. We conclude that the limitations period of the Parentage Act is not an accrual provision because it is based on two fixed and specified events, i.e., the birth of the child and the child's attainment of the age of majority.
Equitable tolling may also be applied to extend a limitations period. This doctrine applies to prevent a statute of limitations from being used as a sword by a defendant whose conduct contributed to the expiration of the statutory period. This is because "`[s]tatutes of limitation are primarily a shield to protect a defendant from having to defend against stale claims.'" Bernoskie, supra, 344 N.J.Super. at 167, 781 A.2d 52 (quoting Dunn v. Borough of Mountainside, 301 N.J.Super. 262, 280, 693 A.2d 1248 (App.Div.1997), certif. denied, 153 N.J. 402, 709 A.2d 795 (1998)). Hence, the doctrine of equitable tolling may be applied where a plaintiff has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. Dunn, supra, 301 N.J.Super. at 280, 693 A.2d 1248. Cf. Knauf v. Elias, 327 N.J.Super. 119, 122, 129, 742 A.2d 980 (App.Div.1999) (victim not required to file complaint within two-year statute of limitations and utilize fictitious party practice where defendants' identities were unknown and they had removed themselves from this state thereby triggering the statutory tolling provision applicable to non-resident defendants).
In Bernoskie, supra, 344 N.J.Super. at 166, 781 A.2d 52, the doctrine was applied where the plaintiff was prevented from filing her wrongful death action in a timely manner "because her husband's alleged murderers escaped detention and apprehension for more than forty years." In *1188 Dunn, supra, 301 N.J.Supra. at 277-78, 693 A.2d 1248, the doctrine was applied where the defendant, a police officer who had sexually assaulted the plaintiff, had an official duty to report his crime and had violated that duty by concealing his identity.
Although we have found no case where the doctrine has been applied in a paternity proceeding to allow a plaintiff to bring his otherwise untimely action where it is the biological father who is alleged to have deceived the presumed father, we discern no reason to bar its use in this instance. Here, not only defendant but also B.E.C., the mother of the child, concealed the true facts of D.C.'s parentage from plaintiff. The duplicity was enhanced by defendant's agreement to serve as godfather for the child. When he moved from the state soon after the child's birth, concealment of the child's parentage was furthered. We must also recognize that plaintiff and B.E.C. divorced when D.C. was ten years old. Although plaintiff maintained a relationship with D.C., he did not live with the child. Plaintiff did not live proximate to the child's mother, particularly after he moved to Florida and had limited contact with her. These circumstances singly and cumulatively enhanced the ability of B.E.C. and defendant to conceal the parentage of D.C. Moreover, even after D.C.'s mother disclosed his parentage and D.C. met with defendant, the ruse was furthered for another three years.
The application of the doctrine of equitable tolling in this case does not undermine the purposes of the Parentage Act. As noted, the purpose of the Parentage Act is to ensure that each child may establish and enjoy the rights inherent in a parent-child relationship. Fazilat, supra, 180 N.J. at 82, 848 A.2d 761. To this end, the Parentage Act assures equal rights to all children and parents with respect to each other, a procedure to establish parentage, and financial support. Ibid. Allowing plaintiff to pursue defendant does no violence to these statutory purposes. Plaintiff's action allows an acknowledgement of responsibilities and a reconciliation of obligations. It is not calculated to disrupt fragile familial relationships or to leave a young child bereft of required paternal guidance. In these circumstances, resort to the statutory limitations period acts as a shield rather than the sword for a party whose conduct deserves no such protection. Therefore, we affirm the orders entered denying defendant's motion to dismiss the complaint as time-barred.[3]
Having determined that plaintiff's complaint was not time-barred, we address his contention that the judge improperly limited defendant's liability. Plaintiff argues that he is entitled to reimbursement of the post-emancipation expenses. We disagree.
Plaintiff's claim here is that N.J.S.A. 9:17-55a allows a court to enter an award of "reasonable expenses" of "support" and is intended to avoid unjust enrichment by the biological father. Although the amended divorce judgment between plaintiff and B.E.C. specifically provided that plaintiff's obligation to contribute to D.C.'s support would terminate on his twenty-second birthday, he argues that he was still obligated to help his son finish his college education and that he should be compensated for the amount he so expended. The judge ruled that reimbursement *1189 under the Parentage Act is limited to "support." When plaintiff's legal obligation to provide support terminated, so did his right to recover for his expenses.
A paternity "judgment or order may contain any other provision directed against the appropriate party" concerning the "duty of support" or any other matter "in the best interests of the child." N.J.S.A. 9:17-53c. See also R. 5:14-3 (in proceedings to determine parent-child relationship, judgment or order may contain "any other provisions concerning support ... and any matter in the best interest of the child or as provided by law"). "The court may limit a parent's liability for past support of the child to the proportion of the expenses already incurred that the court deems just." N.J.S.A. 9:17-53d.
"In determining the amount to be paid by a parent for support of the child and the period during which the duty of support is owed, a court shall apply the child support guidelines" and shall consider all relevant facts when deviating from such guidelines, including, as relevant to this case, the need and capacity of the child for education, including higher education. N.J.S.A. 9:17-53e; R. 5:14-3. Essentially, this means that a trial court can require the father of a child born out of wedlock to provide post-minority support for the child's college education in the same manner and to the same extent as such support can be ordered in connection with a divorce. Jones v. Williams, 592 So.2d 605, 607 (Ala.Civ.App.) (interpreting the UPA), aff'd sub nom. Ex Parte Jones, 592 So.2d 608 (Ala.1991). This rule is consistent with the rule articulated in Newburgh v. Arrigo, 88 N.J. 529, 543, 443 A.2d 1031 (1982).
The amount in dispute here, $23,819, consists largely of D.C.'s three remaining semesters at an art school, from 1992 through 1994, for which plaintiff paid $23,069. There is also a small amount paid by plaintiff for D.C.'s unreimbursed medical expenses while he was in college but past the age of twenty-two, and a small amount paid by plaintiff for D.C. to take some post-graduate courses at the University of Montana in 1998 and 1999. D.C. did not finish college by the age of twenty-two because he switched schools, took a year off, and changed majors. There is no evidence in the record as to what degree he ultimately received or his occupation.
The difficulty with applying the principles of Newburgh or the Parentage Act to the facts of this case is that the best interests of the child are implicated here at best tangentially. That is, the trial court's order did not interfere with D.C.'s ability to obtain a college education, nor did it require D.C. to incur any debts or liability to fund that education. While plaintiff obviously thought it was in D.C.'s best interests to pay for the child's college education until he was almost twenty-five years old, not every parent would feel that way, especially one such as defendant on whom the burden of support was being imposed many years after the fact.
Plaintiff also contends that the court erred in refusing to award him prejudgment interest on the amount awarded under the Parentage Act for past support paid. The amount of interest sought by plaintiff here, accrued through December 31, 2002, was $184,271.33, based on a calculation of simple interest from the date each support payment was allegedly due, using the rates set forth at Rule 4:42-11.
In denying plaintiff's claim for prejudgment interest, the judge held that there was no authority for awarding prejudgment interest on support obligations and that Rule 4:42-11 applies only to tort actions. Plaintiff argues that prejudgment interest is authorized under both N.J.S.A. *1190 9:17-53c ("any other matter in the best interests of the child") and under Rule 5:14-3 ("any matter in the best interest of the child or as provided by law"). Although plaintiff recognizes that Rule 4:42-11 authorizes prejudgment interest only in tort actions, he nevertheless argues that a court has broad discretion to award such interest in other actions as well, especially where equity demands it. He contends that the potential for defendant's unjust enrichment provides the necessary equitable circumstance.
Prejudgment interest may be awarded in non-tort actions, and even on unliquidated claims, not as a matter of right but in accordance with equitable principles. Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464, 478, 541 A.2d 1063 (1988); Bak-A-Lum Corp. of Am. v. Alcoa Bldg. Prods., Inc., 69 N.J. 123, 131, 351 A.2d 349 (1976); Ellmex Constr. Co. v. Republic Ins. Co., 202 N.J.Super. 195, 210-13, 494 A.2d 339 (App.Div.1985), certif. denied, 103 N.J. 453, 511 A.2d 639 (1986). Its purpose is to compensate a party for the lost earnings on a sum of money which has been retained by another. AGS Computers, Inc. v. Bear, Stearns & Co., 244 N.J.Super. 1, 4, 581 A.2d 508 (App.Div.1990). A trial court's exercise of discretion with respect to the awarding of prejudgment interest should be sustained on appeal unless it constitutes a manifest denial of justice. Gilbert v. Durand Glass Mfg. Co., 258 N.J.Super. 320, 331, 609 A.2d 517 (App.Div.1992); A.J. Tenwood Assocs. v. Orange Senior Citizens Housing Co., 200 N.J.Super. 515, 525, 491 A.2d 1280 (App.Div.), certif. denied, 101 N.J. 325, 501 A.2d 976 (1985).
Although there is no case from our jurisdiction considering prejudgment interest on child support awarded under the Parentage Act, cases from other jurisdictions are split on this issue. Compare, Herrero v. Pearce, 571 So.2d 96, 97 (Fla.Dist.Ct.App.1990) (in paternity action, party entitled to child support award is also entitled to prejudgment interest computed from date court determines each support payment to have been due) and Linard v. Hershey, 489 N.W.2d 599, 604-05 (S.D. 1992) (allowing prejudgment interest where defendant frequently and sporadically did not pay his support obligation), with R.E.M. v. R.C.M., 804 S.W.2d 813, 814 (Mo.Ct.App.1991) (since amount due mother for child born out of wedlock was contingent on court's determination under the UPA, claim was unliquidated "and father did not know amount he owed and could not be in default for not paying") and Padilla v. Montano, 116 N.M. 398, 862 P.2d 1257, 1266-67 (App.1993) (until parentage was determined, father was under no legal obligation to support child and mother's claim was unliquidated; until claim was filed, father admitted paternity, and evidence was taken of father's income, there was no sum certain which father knew he legally owed).
We agree with the reasoning of the Missouri and New Mexico courts. Even if defendant suspected from D.C.'s birth that he was the child's father, until his paternity was adjudicated and he was found to owe a particular sum of money to plaintiff, there was no sum certain and no legal obligation for him to pay anything. While a court has broad discretion to award prejudgment interest even on unliquidated claims, this was not a case calling for defendant to have paid his debt to plaintiff at any time before plaintiff actually instituted suit denying his own paternity.
Plaintiff also claims that the court erred in denying his claim for attorneys' fees and costs because the Parentage Act expressly allows such an award.
N.J.S.A. 9:17-54 provides:

*1191 The court may order the reasonable fees of counsel, experts, and the child's guardian ad litem, and other costs of the action and pre-trial proceedings, including blood or genetic tests, to be paid by the parties in proportions and at times determined by the court. (emphasis added).
We hold that section 54 of the Parentage Act authorizes the imposition of attorneys' fees to the prevailing party. J.W.P. v. W.W., 255 N.J.Super. 1, 3-4, 604 A.2d 603 (App.Div.1991); Vasquez v. Bolduc, 212 N.J.Super. 455, 458, 515 A.2d 500 (App.Div.1986). The decision to award such fees is discretionary, must be supported by an appropriate affidavit of services, and evaluated in accordance with the accepted factors. Vasquez, supra, 212 N.J.Super. at 458, 515 A.2d 500; R. 4:41-9(a)(1).
Here, the record shows that in June 2002, as part of his motion for a judgment of paternity, plaintiff sought counsel fees of $75,230 and costs of $1454 he had incurred to compel defendant to undergo DNA testing. When the judgment of paternity was entered on June 30, 2002, defendant was ordered to compensate plaintiff only for the fees charged for the DNA testing, or $1050.
In March 2003, when plaintiff sought entry of a supplemental judgment of paternity regarding support, he did not renew his claim for attorneys' fees. The issues in dispute at that time were limited to whether post-emancipation expenses and prejudgment interest should be awarded. By this time, the judge had ruled that summary judgment should be entered in favor of plaintiff but also had held that N.J.S.A. 9:17-55 limited the relief he could confer. Given the motion judge's holding that he was limited to awarding only reimbursement for child support despite the express direction of N.J.S.A. 9:17-54, we hesitate to treat the absence of a renewed request for fees as a waiver. Due to the motion judge's misperception of his authority to award attorneys' fees, we further order that the motion judge consider plaintiff's application for fees.
Finally, plaintiff contends that the court erred in dismissing his claims for fraud and intentional infliction of emotional distress and failing to allow him to amend his complaint to assert a claim of unjust enrichment. We hold that these claims were properly dismissed.
In dismissing these claims, the judge noted that the act of adultery, in and of itself, does not violate any law and is not "outrageous." Nevertheless, adultery is "inimical to the marriage relationship" and "[p]ublic policy questions abound." Another concern articulated by the judge was that defendant could assert as an offset the fact that plaintiff's damages were mitigated by the joy and benefit plaintiff enjoyed from the love and affection he received from and gave to the child he thought was his.
He reasoned that the relationship between the parent and child "would be placed under a microscope to the clear detriment of the child and the likely detriment of the parent." Although the child in this matter was thirty years old, the "strain of such litigation and the uncertainty if the child were only five years old could cause life altering trauma."
The judge concluded that these claims had to be dismissed because the "destruction of a familial relationship" would be the inevitable outcome of allowing them to proceed. In so concluding, he relied on two cases, one from California and one from Nebraska, that had rejected similar claims.
*1192 The court also found that our own Legislature had made a public policy determination in this sensitive area by adopting the Parentage Act. That is, the Parentage Act specifically limited damages to those set forth in N.J.S.A. 9:17-55 and did not authorize tort claims arising out of allegations of intentional infliction of emotional distress. There were no genuine issues of material fact and N.J.S.A. 9:17-55 specifically established the types of permitted damages in parentage cases; therefore, plaintiff was entitled to nothing more and defendant was entitled to summary judgment.
On appeal, plaintiff argues that the court: failed to view the facts in the light most favorable to him; failed to address a Law Division opinion which allowed similar claims to proceed in a paternity action; misconstrued public policy as evidenced by the Parentage Act; failed to cite any controlling New Jersey authority; improperly relied on the joy/benefit rule; and failed to recognize that these tort claims did not depend on any statutory authorization.
Turning to plaintiff's first argument, we determine that the facts that were in dispute here were not material to the legal issue to be decided. That is, regardless of when plaintiff, defendant or B.E.C. knew or should have known that defendant and not plaintiff, was D.C.'s father, and regardless of plaintiff's relationship with D.C., the motion judge concluded that the causes of action brought by plaintiff for his emotional distress and other tort damages could not proceed as a matter of law and as a matter of public policy.
Turning to that legal issue, plaintiff is correct that the court failed to cite C.M. v. J.M., 320 N.J.Super. 119, 726 A.2d 998 (Ch.Div.1999). As the decision of a trial court, we are not obliged to treat it as precedent. Mears v. Economy Brake Serv., Inc., 78 N.J.Super. 218, 228, 188 A.2d 207 (App.Div.), certif. denied, 40 N.J. 216, 191 A.2d 59 (1963). We also disagree with its rule.
In C.M. v. J.M., supra, shortly before the wife filed for divorce, she presented her husband with the results of DNA tests and told him that her paramour was the father of their two children, both of whom were under three years old. 320 N.J.Super. at 122-23, 726 A.2d 998. The husband filed a third-party complaint against the paramour seeking damages for the "emotional distress resulting from the severance of a financial and emotional bond with the children he was led to believe were his own." Id. at 123, 726 A.2d 998. The paramour moved to dismiss the complaint on the ground that it was barred by N.J.S.A. 2A:23-1 to -7, commonly known as the Heart Balm Act, which bans the common law claims of criminal conversation, seduction, alienation of affections, and breach of a promise to marry. Ibid. The husband contended, however, that the "`extreme and outrageous' conduct was not the extramarital affair between [his wife] and [her paramour], but its ultimate effect on him and the children." Id. at 124, 726 A.2d 998.
The judge found that the Legislature's prohibition against claims for criminal conversation (a common law reference to adultery) did not bar the husband's claims because his claims were based on events which transpired after the adultery, i.e., the birth of two children alleged to be the husband's. Id. at 125, 726 A.2d 998. The husband was seeking damages not for the emotional distress he suffered as a result of the adultery, but for the "emotional distress which resulted from learning that children he had been led to believe he fathered, were, in fact, born of the adulterous relationship." Ibid.
Similarly, the husband's claims were not barred by the legislative ban against actions *1193 for alienation of affections (or loss of consortium, i.e., loss of marital affections, comfort, society, assistance, and services), because the husband was not seeking recovery for the loss of his wife's love and affection but for the emotional distress resulting from the dissolution of his relationship with children he raised as his own. Id. at 125-26, 726 A.2d 998. Finding that the birth of a child held out to be the child of another was outrageous conduct, the judge extended liability to the paramour as well. Id. at 129, 726 A.2d 998.
While C.M. is analogous to this case, we decline to follow it because plaintiff's claims in this case are similar to the abolished "Heart Balm" causes of action. Our Heart Balm Act, N.J.S.A. 2A:23-1 to -7, abolished causes of action for alienation of affections, criminal conversation, seduction, and breach of contract to marry. The Legislature declared that it "shall be liberally construed to effectuate the objects and purposes thereof and the public policy of the state as hereby declared." N.J.S.A. 2A:23-6; Magierowski v. Buckley, 39 N.J.Super. 534, 547-58, 121 A.2d 749 (App.Div.1956). Although plaintiff argues that he is not seeking to recover for interference with his marital relationship, but for the emotional pain he endured upon learning that the true paternity of his child was hidden from him, the underlying conduct is the same. His claim as asserted is, in essence, a claim that another man slept with his wife behind his back. Although he alleges that adultery is not the basis for his cause of action, that does not seem to be the case at all.
To the extent that plaintiff's claim is one for destruction of the parent-child relationship, such a claim would embroil the court in a microscopic examination of how that relationship has been affected by defendant's conduct and would make the child the focal point of any litigation. Day v. Heller, 264 Neb. 934, 653 N.W.2d 475, 480-82 (2002). Interestingly, D.C. did not choose to intervene in the litigation or to join in any of plaintiff's claims. In any event, plaintiff has admitted that his relationship with D.C. has not been destroyed or negatively affected in any way. He continues to have a loving and trusting father-son relationship with him.
If plaintiff claims, that he is not seeking damages for the destruction of his marital relationship, which would be barred by the Heart Balm Act; that he is not seeking damages for the destruction or impairment of his relationship with D.C.; and that he has not suffered any impairment of his relationship with D.C., then it is difficult to fathom exactly what damages he is seeking over and above those for recoupment of the expenses he made on D.C.'s behalf. Viewed in this light, we are confronted with a claim founded on a betrayal of marital trust that cannot be remedied by a court in the form of tort damages.
Finally, we address defendant's other issue on his cross-appeal, that the judge erred in denying his motion for leave to file an amended answer to assert a cross-claim against B.E.C. for contribution. We affirm.
First, the motion to amend and assert a contribution claim was filed just before defendant filed his motion for summary judgment. The eleventh hour addition of this cross-claim would have prejudiced B.E.C. She had not participated in discovery as an adversary and had taken very little discovery herself. Defendant did not assert any reason for the delay in seeking contribution from her.
The motion judge, however, denied the motion on its merits, i.e., for the reason that it stated no cause of action. He found that defendant was obligated to plaintiff only for the amount of child support *1194 plaintiff had paid on behalf of D.C. Since B.E.C. had provided her share of the support of D.C. until he was emancipated could not have brought a claim against her, and defendant thus had no right of contribution from her.
B.E.C. owed plaintiff nothing for the support of D.C. Although she may have Affirmed. shared in the act of deceiving plaintiff about the child's true parentage, that fact would be relevant only if defendant were liable to plaintiff for any fraud or emotional distress damages.
Affirmed in part; reversed and remanded for reconsideration on the issue of attorneys' fees.
NOTES
[1] N.J.S.A. 9:17-38 to -59.
[2] It may be suggested that section 45a (N.J.S.A. 9:17-45a) recognizes a more expansive limitations period. In B.P. v. G.P., 222 N.J.Super. 101, 104, 536 A.2d 271 (App.Div.), certif. denied, 108 N.J. 579, 531 A.2d 1354 (1987), this court noted that a mother could commence a paternity action at anytime. This statement is clearly dicta. The central issue in the appeal was whether the entire controversy doctrine and section 46a (N.J.S.A. 9:17-46a) of the Parentage Act barred a claim filed following entry of a judgment of divorce. Id. at 105, 536 A.2d 271. We interpret section 45a as a provision designating those who have standing to pursue a claim under the Parentage Act, while section 45b establishes the time within such claims may be commenced.
[3] Due to our disposition of the timeliness issue, we need not address plaintiff's contention that the motion judge erred when he denied his motion to amend his complaint to assert a claim of unjust enrichment. In any event, the motion was timely, it was meritorious, and defendant would have suffered no prejudice.